IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KAMONTE DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:13cv0733 (JCC/JFA) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REPORT AND RECOMMENDATION

This matter is before the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (Docket nos. 13, 15).[1] Kamonte Davis ("plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("Commissioner"), denying his application for Supplemental Security Income ("SSI"), pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381. The Commissioner's final decision is based on findings by the Administrative Law Judge ("ALJ") and Appeals Council (the "Council") that plaintiff was not disabled as defined by the Act and applicable regulations.

For the reasons discussed below, the undersigned recommends that plaintiff's motion for summary judgment (Docket no. 13) be denied; the Commissioner's cross-motion for summary judgment (Docket no. 15) be granted; and that the Commissioner's final decision be affirmed.

---

[1] The Administrative Record ("AR") in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). (Docket nos. 5, 7). In accordance with these rules, this report and recommendation excludes any personal identifiers such as plaintiff's social security number and his date of birth (except for the month and year of birth) and the discussion of plaintiff's medical information is limited to the extent necessary to analyze the case.

## I.  BACKGROUND

In his SSI application, plaintiff complained of attention deficit hyperactive disorder ("ADHD"), borderline intellectual functioning, and limited use of his left arm. (AR 189). Because plaintiff challenges whether the Council and the ALJ erred in determining that he was not disabled under the Act, plaintiff's medical history, plaintiff's school records, third-party function reports, and plaintiff's and his mother's hearing testimony are summarized below.[2]

### A.   Personal Background

Plaintiff was born in May 1993, and was therefore in the "Adolescents" age group on October 6, 2009, the date the application was filed. (AR 27). Plaintiff attained age 18 in May 2011. *Id.* Plaintiff was enrolled in special education through the tenth grade, and at the time of the ALJ hearing, plaintiff planned to complete his GED. (AR 48). Plaintiff has held one job since the date of his alleged disability, as a maintenance worker/cleaner, working two days per week for the five months prior to his ALJ hearing. (AR 49–51).

### B.   Medical History

In 1999, when plaintiff was five years old, plaintiff's mother complained to plaintiff's pediatrician, Dr. Nora J. José, that plaintiff was hyperactive at home and attention deficit at school. (AR 413). During plaintiff's January 18, 2001 appointment with his pediatrician, plaintiff's mother indicated that she wanted plaintiff checked due to hyperactivity at school. (AR 415). Plaintiff was referred to the Department of Neurology at Children's National Medical Center. (AR 435–36).

On January 28, 2001, plaintiff sought treatment from Bennett L. Lavenstein, M.D., at the Department of Neurology, and underwent an initial psychiatric evaluation. (AR 435–36). In his

---

[2] The ALJ considered plaintiff's complete medical record consistent with 20 C.F.R. § 416.912(d). Therefore, this court will consider that record in determining whether substantial evidence supports the Commissioner's decision.

report, Dr. Lavenstein noted that plaintiff was in the LD (Learning Disability) program, and that plaintiff's school had reported behavioral problems, poor attention span, inability to concentrate and perform tasks, and a marked disinhibition in plaintiff's ability to control his impulses. (AR 435). Plaintiff was cooperative during the exam, in no distress, his performance ability was adequate, and the findings revealed no specific abnormality. (AR 435). Dr. Lavenstein recommended further evaluation and suggested that plaintiff begin a trial of Adderall 5 mg. (AR 436).

On October 25 and November 21, 2004, Kelly Rowe ("Rowe"), the school psychologist at Hybla Valley Elementary School, performed psychological testing on plaintiff. (AR 27, 303–307). At the time plaintiff was eleven years old and in the fifth grade. (AR 303). In her report, Rowe noted that plaintiff had received special education services since kindergarten because of a learning disability. *Id.* Rowe noted that plaintiff's disability resulted from auditory memory delays, motor coordination, and attention delays. *Id.* Rowe administered a Wechsler Intelligence Scale for Children-Fourth Edition ("WISC-IV") test to plaintiff, a developmental test of Visual Motor Integration ("VMI") and a developmental Neuropsychological Assessment ("NEPSY"). (AR 304–306). On the WISC-IV test, plaintiff earned a Full Scale Composite Score of 89, which indicated functioning within the low average range. (AR 304). Plaintiff scored in the high-average range for short-term memory. (AR 305). Although one test placed plaintiff in the low average range of intellectual functioning, Rowe suggested that plaintiff's Full-Scale score might be underestimated, because of his distractibility. *Id.* Plaintiff scored within borderline to average ranges on the VMI test, and below average in visual memory and coordination in NEPSY. (AR 305–306). Rowe also noted that plaintiff's medications helped to

3

reduce his ADHD. (AR 303). Overall, Rowe stated plaintiff's cognitive skills appeared to be within normal limits. (AR 305).

On February 1, 2010, plaintiff was seen by Gustavo Rife, Psy. D., for a consultative psychological examination as a part of his SSI claim. (AR 333–37). Plaintiff was cooperative, alert, and oriented. (AR 335). Rife diagnosed plaintiff with ADHD and borderline intellectual functioning. (AR 336–37). Rife administered the WISC-IV test, on which plaintiff earned a Full Scale Composite Score of 77, which indicated plaintiff's general cognitive functioning was within the borderline range. (AR 334). Plaintiff's verbal reasoning abilities were in the low average range, and his perceptual, non-verbal reasoning skills were in the average range. *Id.* Plaintiff's ability to sustain attention, concentrate, and exert mental control was in the borderline range. (AR 335). Plaintiff's abilities to process routine information without making errors and to process visual information were in the borderline range. *Id.* Rife also performed a Mental Status Examination and made some behavioral observations. *Id.* In this evaluation, plaintiff demonstrated an average level of attention and concentration, and his intellectual ability was estimated to be above average. *Id.* Plaintiff was able to initiate and sustain social connections with others. (AR 336). Rife ultimately concluded that while plaintiff had borderline mental limitations, plaintiff's impairments and their mild limitations would not interfere with his ability to perform work-related jobs, though Rife suggested that plaintiff would benefit from minimal redirection and special supervision when completing tasks. *Id.*

## C.   School Records

In December 2004, Ellen Colehower ("Colehower"), plaintiff's special education teacher at Hybla Valley Elementary School, conducted an educational evaluation on plaintiff. (AR 308–11). Colehower administered the Woodcock-Johnson III Test of Achievement ("WJ III"), and

reported scores in the low average range for reading and math, and in the average range for written expression. (AR 310). Plaintiff's oral language was his strength. *Id.* Colehower concluded that plaintiff's oral language and written expression skills were average; his academic skills, his ability to apply those skills, and his fluency with academic tasks were in the low average range; and his performance in reading, mathematics, math calculation skills, and written language was in the low average range. (AR 311).

On December 18, 2009, Catherine Allen ("Allen"), the Mt. Vernon High School Special Education Department Chair, completed a Teacher Questionnaire. (AR 257–64). Allen reported that plaintiff had a slight problem in his ability to acquire and use information. (AR 258). Allen reported plaintiff had a slight problem in attending and completing tasks, such as carrying out single-step instructions and working at a reasonable pace; plaintiff had no problem in sustaining attention during play and sports activities, but he had obvious problems in several other categories including carrying out multi-step instructions, changing from one activity to another, and working without distractions. (AR 259). In the area of interacting and relating with others, Allen stated plaintiff had slight problems in playing cooperatively with children, making and keeping friends, expressing anger appropriately, and using adequate vocabulary to express thoughts. (AR 260). Allen stated plaintiff had no problem relating experiences and telling stories, and interpreting the meaning of facial expressions, body language, hints, and sarcasm. (AR 260). Allen reported obvious problems with seeking attention appropriately, following rules, asking permission appropriately, respecting/obeying authority, and taking turns in a conversation. (AR 260). Allen stated plaintiff had no problems in the area of moving about and manipulating objects. (AR 261). Lastly, Allen stated plaintiff had a slight problem in certain tasks related to caring for oneself; specifically, in handling frustration appropriately and in using

5

good judgment regarding personal safety, and obvious problems in being patient, asserting emotional needs, calming himself, using coping skills, and knowing when to ask for help. (AR 262).

### D.     Functioning Reports[3]

Plaintiff's mother completed two function reports in connection with plaintiff's SSI application. (AR 198–207, AR 217–26). On December 13, 2009, plaintiff's mother completed a Child Function Report for a child aged 12 to 18. (AR 198–207). She reported that plaintiff had difficulty concentrating on more than one task at a time. (AR 201). She stated that plaintiff could read simple sentences and write short sentences, but he had difficulty remembering an entire story. (AR 202). She noted that some of plaintiff's physical activities were limited due to a left arm hairline fracture. (AR 203). Plaintiff's mother noted that plaintiff needed a written task list to help him stay focused. (AR 206).

On August 5, 2010, plaintiff's mother completed a second Child Function Report for a child aged 12 to 18. (AR 217–26). She reported no significant changes in plaintiff's condition. *Id.* She noted that plaintiff generally got along with his school teachers. (AR 223).

### E.     Testimony

#### 1.     Plaintiff's Testimony

At the November 15, 2011 hearing before the ALJ, plaintiff testified that he had completed schooling through the tenth grade, and that he planned to pursue a GED, but was not actively doing so. (AR 48–49). Plaintiff testified that he had been diagnosed with ADHD. (AR 52). Plaintiff testified that he had been prescribed Adderall for the treatment of his ADHD, though he experienced lazy-like symptoms from the medication. *Id.* Plaintiff testified that the

---

[3] Some of the information contained in these reports may be misreported. It appears that in some instances the boxes marked are inconsistent with the written comments.

medication helped him. *Id.* Plaintiff testified that his ADHD caused him to have difficulty remembering certain things. *Id.*

Plaintiff also testified that he had been working for the five months prior to the ALJ hearing as a part-time cleaner at Bottom Dollar, working approximately two days per week, or sixteen hours per week. (AR 49–51). Plaintiff testified that he would have no problem working additional hours, and could work four days a week. (AR 49–50). Plaintiff testified that his supervisor usually checked his work. (AR 51).

      2.    Plaintiff's Mother's Testimony

Plaintiff's mother ("Ms. Davis") also testified at the November 15, 2011 hearing before the ALJ. (AR 53). Ms. Davis testified that plaintiff had ADHD, problems with focusing, concentrating, and other mental limitations. (AR 53–56). Ms. Davis testified that plaintiff had difficulty executing multiple tasks when they were assigned at one time, that the medication helped plaintiff, and that plaintiff had no issues with compliance. (AR 54-55). Ms. Davis testified that plaintiff enrolled in the eleventh grade, but grew frustrated with the curriculum and the structure of the Individualized Education Program ("IEP"), and dropped out. *Id.* Ms. Davis testified that plaintiff was not pursuing his GED because school frustrated him. (AR 56).

**F.    SSA Proceedings**

Plaintiff's application for SSI was filed when he was 16 years old. (AR 22). In the initial disability report, plaintiff alleged that the following illnesses, injuries, or conditions very seriously limited his activities, compared to other children the same age who do not have the conditions: (1) ADHD; and (2) limited use of his left arm due to a hairline fracture. (AR 189). Plaintiff's alleged disability onset date is July 7, 2009.[4] (AR 22, 47).

---

[4] Plaintiff initially alleged that his disability had been ongoing since January 1, 1998. At the hearing, plaintiff, through counsel, amended his alleged onset of disability date to July 7, 2009. (AR 47).

Plaintiff's initial claim was denied by the Social Security Administration ("SSA") Regional Commissioner on February 26, 2010.[5] (AR 84–94). Plaintiff then filed a request for reconsideration of this initial denial. (AR 95). In the reconsideration, plaintiff argued that his ADHD had gotten worse, and his struggles with concentration and comprehension were growing increasingly difficult as the difficulty of his schoolwork increased. (AR 73). On September 14, 2010, the Regional Commissioner denied plaintiff's request for reconsideration, after considering an additional medical report received on August 18, 2010 from Dr. Nora José, and an additional Child Function Report received on August 31, 2010, in addition to medical reports already in his file. (AR 101–104). The Regional Commissioner found that while the plaintiff did have "some limitations," and while his mother "may be concerned" about his functioning in school, the plaintiff's activities were not very seriously restricted by his conditions, and he was able to learn many new things and perform many daily tasks. (AR 101).

On September 29, 2010, plaintiff requested a hearing before an ALJ. (AR 22, 105). Plaintiff's request was acknowledged on January 19, 2011, and a hearing before an ALJ was scheduled for November 15, 2011. (AR 106–109, 116–21).

## PROCEDURAL HISTORY

### A.   Administrative Proceedings

On November 15, 2011, plaintiff and counsel appeared before ALJ Eugene Bond for a hearing in Washington, DC. (AR 22, 43). At the hearing, plaintiff and his mother testified and exhibits 1A–10F were made part of the record. (AR 43–57).

---

[5] Initial and reconsideration reviews in Virginia are performed by an agency of the state government (the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services) under arrangement with the SSA. 20 C.F.R. § 404, Subpt. Q; *see also* § 404.1503. Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

On December 12, 2011, the ALJ issued a decision finding that plaintiff, prior to the age of 18, did not meet, medically equal, or functionally equal a listing and therefore was not disabled as defined in section 1614(a)(3)(C) of the Act, 42 U.S.C. § 1382c(a)(3)(C). (AR 22–42). At the time of the ALJ's decision, plaintiff was 18 years old. Accordingly, the ALJ also considered plaintiff's disability under the adult standard, finding that plaintiff, since attaining the age of 18 in May 2011, could perform his past relevant work as a maintenance worker, and therefore was not disabled within the meaning of the Act, section 1614(a)(3)(A), 42 U.S.C. § 1382c(a)(3)(A). (AR 22–42).

On December 28, 2011, plaintiff submitted a request for review of the ALJ's December 12, 2011 decision to the SSA Appeals Council (the "Council"). (AR 18). The Council granted plaintiff's request for review on February 7, 2013. (AR 144–47). On April 13, 2013, the Council issued a decision, adopting the ALJ's findings that plaintiff was not disabled, as defined in the Act, at any time though the date of the ALJ's December 12, 2011 decision. (AR 4–7). The Council did not adopt the ALJ's findings as to plaintiff's residual functional capacity upon attainment of age 18, or the finding at step four, that plaintiff could perform his past relevant work. (AR 4–6). Nonetheless, the Council concluded that plaintiff was not eligible for SSI under sections 1602, 1614(a)(3)(A), or 1614(a)(3)(C) because his limitation to simple repetitive tasks did not significantly affect his RFC to perform work related activities. (AR 4–7).

At the time of the Council's unfavorable decision, plaintiff was nineteen years old. (AR 22). As such, plaintiff alleges his claim is both a child's SSI claim, as well as an adult SSI claim. (Docket no. 14 at 2). The Council's April 13, 2013 decision is the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g).

## B.    Proceedings in this Court

On June 14, 2013, plaintiff filed a civil action for review of the Commissioner's final decision. (Docket no. 1). The Commissioner filed an answer to plaintiff's complaint on September 12, 2013 (Docket no. 4) along with the Administrative Record (Docket nos. 5, 7). On October 1, 2013, the District Judge entered an Order stating that the case was appropriate for disposition on the record or on cross-motions for summary judgment and that if the parties consented to the jurisdiction of a magistrate judge, the case would be referred to a magistrate judge for entry of judgment pursuant to 28 U.S.C. § 636(c), otherwise, the case would be referred to a magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 8). The parties have not consented to the exercise of jurisdiction by a magistrate judge in this case. Accordingly, this case is before the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On November 7, 2013, plaintiff filed a motion for summary judgment and a memorandum in support. (Docket nos. 13, 14). On November 15, 2013, the Commissioner filed a cross-motion for summary judgment (Docket no. 15) along with a memorandum in support and a memorandum in opposition to plaintiff's motion for summary judgment. (Docket nos. 16, 17). No additional briefs have been filed and the time for doing so has expired.

## QUESTIONS PRESENTED

The questions presented by these motions for summary judgment are: (1) whether the Commissioner used the proper legal standards; (2) whether the Commissioner's determination that plaintiff did not functionally equal any of the listings is supported by substantial evidence; and (3) whether the Commissioner's RFC assessment that plaintiff could perform unskilled work that was simple and repetitive in nature was supported by substantial evidence.

## STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

To determine whether substantial evidence exists, the court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact—if the findings are supported by substantial evidence—are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 477 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. § 416.924. The analysis is conducted for the Commissioner by an ALJ, and it is that process that a court must examine on appeal to determine

11

whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence in the record.

Reviews of ALJ decisions are conducted under the harmless error analysis. *Hammond v. Colvin*, 2013 U.S. Dist. LEXIS 160741, at *19 (E.D. Va. 2013). Courts will disregard any errors or defects in a lower tribunal that "do not affect any party's substantial rights." Fed. R. Civ. P. 61 (harmless error); *see also Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Further, in reviewing an ALJ decision, "the court does not search for procedural perfection." *Morris*, 864 F.2d at 335; *see also Hubbard v. Astrue*, No. 3:10cv1132, 2011 WL 3629198, at *13 (S.D.W. Va. July 29, 2011) (noting Fourth Circuit has taken same approach in several unpublished decisions). Procedural improprieties are a basis for remand only if they cast into doubt whether there is substantial evidence to support the ALJ's decision. *Hubbard*, 2011 WL 3629198, at *13. Accordingly, if the ALJ decision is supported by substantial evidence, and any errors are harmless, the court may affirm the decision, notwithstanding an imperfect procedural analysis.

**Applicable Legal Standards**

### A.    Child's SSI Disability Standard

A claimant under the age of 18 is considered disabled if he suffers from a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and is expected to result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner uses a three-step process to evaluate the SSI claims of minors. 20 C.F.R. § 416.924. At the first step, the ALJ must consider whether the claimant has engaged in "substantial gainful activity" ("SGA").[6] 20 C.F.R.

---

[6] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a

§ 416.924(a). If the claimant establishes that he did not engage in SGA, the claimant must prove

at the second step that he has a severe impairment or combination of impairments that is severe.

*Id.* To qualify as a severe impairment that entitles a claimant to benefits under the Act, it must

cause more than a minimal effect on one's ability to function. 20 C.F.R. § 416.924(c). If a child

suffers from a severe impairment or combination of impairments, the ALJ must lastly determine

whether the child's impairment meets, medically equals, or functionally equals an impairment

listed in Appendix 1, Part 404, Subpart P, and lasts, or is expected to last, for twelve months or

result in death. 20 C.F.R. § 416.924(d)(1). In assessing the functional limitations caused by the

impairments, the ALJ examines a child claimant's limitations in six areas of development and

functioning in order to determine whether he has "marked" limitations[7] in two domains of

functioning, or an "extreme" limitation[8] in one domain. 20 C.F.R. § 416.926a(a). The six

relevant domains of functioning include: (1) acquiring and using information; (2) attending and

completing tasks; (3) interacting and relating with others; (4) moving about and manipulating

objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R.

§ 416.926a(b)(1).

    The standard for reviewing a claim filed on behalf of a child differs based upon the

child's age. To determine the proper standard, the social security regulations define a child of

preschool age as a child from the age of three to the attainment of age six. 20 C.F.R.

§ 416.926a(g)(2). A school-age child is defined as being between the ages of six to the

attainment of age 12. *Id.* An adolescent is defined as being between the ages of 12 and 18. *Id.*

---

profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).
[7] A marked limitation is found when the child claimant's "impairment(s) interferes seriously with [a claimant's] ability to independently initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(2).
[8] An extreme limitation requires that a child claimant's "impairment(s) interferes very seriously with [a claimant's] ability to independently, initiate, sustain or complete activities." 20 C.F.R. § 416.926a(e)(3).

### B.   Adult SSI Disability Standard

The first step in the sequence is determining whether the claimant was working at the time of the application and, if so, whether the work constituted SGA under 20 C.F.R. § 404.1520(b). If a claimant's work constitutes a SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.*

If the claimant establishes that he did not engage in a SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for 12 months or results in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. § 404.1520(d).

If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[9] based on a preliminary assessment of the claimant's RFC[10] and the "physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. §§ 404.1520(e), (f). If such work can be performed, then benefits will not be awarded. *Id.* However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that the claimant is capable of performing other work that is available in

---

[9] Past relevant work is defined as substantial gainful activity in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. § 404.1565(a).

[10] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week or an equivalent work schedule." SSR 96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the record. *Id.*

significant numbers in the national economy, considering the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(f), (g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### C.   Evaluation of Mental Impairments

As plaintiff argues in his motion, in addition to the Child's and Adult's Disability Standards discussed above, a special technique is used for evaluating the severity of mental impairments for adults and persons under the age of 18 when Part A of the Listing of Impairments is used. 20 C.F.R. § 404.1520a. The first step under this special technique is to evaluate the pertinent symptoms, signs, and laboratory findings to determine whether there is a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If a medically determinable mental impairment is found, the symptoms, signs, and laboratory findings must be specified and the decision must show the significant history, including examinations and laboratory findings, and the functional limitations that were considered in reaching a conclusion concerning the severity of the mental impairment. *Id.* The decision must include a specific finding as to the degree of limitations in each of the functional areas described in paragraph (c) of the regulation. 20 C.F.R. § 404.1520a(b)(2).

The assessment of functional limitations is based on the degree to which the impairment interferes with the ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404.1520a(c)(2). Four broad areas are evaluated: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the areas of activities of daily living; social functioning; and concentration, persistence, or pace are rated on a five-point scale: none, one or two, three, four or more. 20 C.F.R. § 404.1520a(c)(4). The degree of

limitation based on episodes of decompensation is rated on a four point scale: none; one or two; three; or four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

If the rating in the first three functional areas is none or mild and the rating in the fourth area is none, it is generally concluded that the impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). If a mental impairment is severe, the next step is to determine if it meets or is equal in severity to a listed mental disorder. 20 C.F.R. § 404.1520a(d)(2). If a severe mental impairment neither meets nor is equivalent in severity to any listing, the next step is to assess the RFC. 20 C.F.R. § 404.1520a(d)(3).

## ANALYSIS

### A.   The ALJ's Decision

With respect to the period of time before plaintiff attained the age of 18, the ALJ noted that plaintiff was an adolescent at his alleged onset date and was currently 18 years old. (AR 27). At step one, the ALJ determined that plaintiff did not engage in SGA during the relevant time. (AR 27). At step two, the ALJ found that plaintiff had severe impairments of ADHD and borderline intellectual functioning. (AR 27–29). However, at step three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (AR 29–30). Further, the ALJ determined that plaintiff did not have an impairment or combination of impairments that functionally equaled the listings. (AR 30). Specifically, the ALJ found that plaintiff had less than marked limitation in acquiring and using information. (AR 33). He maintained less than marked limitation in attending and completing tasks. (AR 33–34). As to interacting and relating to others, plaintiff had less than marked limitation. (AR 34–35). Plaintiff had no limitation in

16

moving about and manipulating objects. (AR 35). The ALJ determined that plaintiff had less than marked limitation in his ability to care for himself. (AR 36). Plaintiff had no limitation as to his health and physical well-being. (AR 37). Accordingly, the ALJ determined that plaintiff was not disabled under the Act. (AR 37).

For the period of time since plaintiff attained the age of 18, the ALJ found at step three of the sequential evaluation process that plaintiff's severe impairments of ADHD and borderline intellectual functioning did not meet or medically equal any of the listings of impairments. (AR 38). The ALJ also found that since attaining the age of 18, plaintiff had the residual functional capacity to perform work at all exertional levels. (AR 39–41). However, the ALJ noted that plaintiff had the following non-exertional limitations: mild limitations in attention, concentration, and mental control, as well as mild short-term memory problems. (AR 39–41).

At step four of the sequential evaluation process, the ALJ found that plaintiff could return to his past relevant work as a maintenance worker/cleaner. (AR 41). Accordingly, the ALJ determined that plaintiff was not disabled under the Act. (AR 41–42).

## B.   The Council's Decision

The April 16, 2013 Council's decision adopted the ALJ's findings with respect to the period of time before plaintiff attained age 18, as well as the ALJ's findings under the first three steps of the sequential evaluation process for the period of time since plaintiff attained age 18. (AR 4–7). The Council did not adopt the ALJ's findings regarding plaintiff's residual functional capacity and the finding at step four of the sequential evaluation process for the period of time since plaintiff attained age 18. (AR 4).

After considering the entire record, the Council modified the ALJ's RFC assessment and limited plaintiff to simple, repetitive unskilled work. (AR 5–6). Thus, there are five specific

17

findings made in the ALJ and Council's decisions that are relevant to the issues concerning the period after plaintiff attained the age of 18 presented by the parties' cross-motions for summary judgment that are currently before the court: (1) that plaintiff had not developed any new impairment since attaining the age of 18; (2) that plaintiff continued to have severe impairments of ADHD and borderline intellectual functioning within the meaning of 20 C.F.R. § 416.924(c); (3) that, since attaining the age of 18, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.924, 416.925 and 416.926); (4) that since attaining the age of 18, plaintiff did not have an impairment or combination of impairments that functionally equaled one of the Listings, and that plaintiff had the residual functional capacity to perform work that is simple and repetitive in nature; and (5) that plaintiff had no past relevant work, but could perform unskilled simple, repetitive work. (AR 6). Accordingly, the Council concluded that plaintiff was not disabled under Section 204.00 of 20 C.F.R. Part 404, Subpart P, Appendix 2, at any time through December 12, 2011, the date of the ALJ's decision. (AR 5).

### C.   Substantial Evidence Supports the ALJ's Determination That, Prior to Attaining the Age of 18, Plaintiff Did Not Functionally Equal Any Listing

Plaintiff challenges the ALJ and Council's decisions, arguing that plaintiff is entitled to benefits because the ALJ and Council failed to follow the proper procedure for analyzing mental impairments under the Act and policy interpretation.[11] (Docket no. 14 at 4–9). Plaintiff contends that both the ALJ and the Council failed to evaluate his pertinent symptoms, signs, and laboratory findings to determine whether he had a medically determinable mental impairment, failed to specify those which substantiated the presence of the impairment, and failed to rate the degree of functional limitation in the four required areas of function. (Docket no. 14 at 7–8).

---

[11] Plaintiff cites 20 C.F.R. § 404.1520(a) and Social Security Ruling 96-8p for support in arguing that the Commissioner failed to follow the proper procedure for analyzing mental impairments. (Docket no. 15 at 4–7).

The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff's impairments did not meet or medically equal any listing and plaintiff has demonstrated no harmful error in any failure to follow the mental impairment analysis. (Docket no. 16 at 12–15). The undersigned agrees with defendant.

In the ALJ's decision of December 12, 2011, the ALJ made five specific findings that are relevant to the issues concerning the period prior to plaintiff attaining the age of 18 presented by the parties' cross-motions for summary judgment that are currently before the court: (1) that plaintiff had not engaged in SGA since the date the application was filed (20 C.F.R. §§ 416.924(b) and 416.972); (2) that plaintiff had severe impairments of ADHD and borderline intellectual functioning within the meaning of 20 C.F.R. § 416.924(c); (3) that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1, Part A or B (20 C.F.R. 416.924, 416.925 and 416.926); (4) that plaintiff did not have an impairment or combination of impairments that functionally equaled one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924(d) and 416.926(a)); and (5) that plaintiff was not disabled prior to attaining the age of 18 as prescribed in 20 C.F.R. § 416.924(a).[12]  (AR 27–37).

In making the determination that plaintiff's impairment did not meet or medically equal one of the listed impairments, Listing 122.11 for ADHD was considered.  Plaintiff does not appear to contest the ALJ's finding that the medically documented findings did not support all three of the following:  (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity, and at least two of the following:  (1) marked impairment in age appropriate cognitive/communicative function; (2) marked impairment in age-appropriate social functioning;

---

[12] Plaintiff is not contesting the finding of no SGA and severe impairments of ADHD and borderline intellectual functioning.

(3) marked impairment in age-appropriate personal functioning; and (4) marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. § 404, Subpt. P, App. 1.

The ALJ then turned to the analysis of whether the plaintiff's impairments functionally equaled the listings. Initially, the ALJ reviewed the record and determined that the plaintiff's impairments could reasonably be expected to produce the alleged symptoms, but the plaintiff's statements concerning the intensity, persistence, and limiting effects are not entirely credible as shown by the medical records and academic records. (AR 39).

As provided in 20 C.F.R. 416.926a, the ALJ then did an analysis of the six domains noting whether the limitation for each domain constituted a marked or extreme limitation. To satisfy the functional equivalent test, one must have marked limitations[13] in two domains or an extreme limitation in one domain. The ALJ's analysis and finding for each of the six domains is discussed below.

1. Substantial evidence supports the determination that plaintiff had less than marked limitation acquiring and using information.

The ALJ determined that plaintiff had less than marked limitation in acquiring and using information during the relevant period. (AR 33). Adolescent children without impairments should be able to perform the following examples of activities: (1) understand words about space, size, or time; (2) rhyme words; (3) recall important things learned in school yesterday; (4) solve mathematics questions or compute arithmetic answers; and (5) explain themselves in non-simple sentences. 20 C.F.R. 416.926a(g)(3).

Here, plaintiff's medical records support the ALJ's determination that plaintiff had less than marked limitations in the domain of acquiring and using information. The WISC-IV test administered by Rife in 2010 indicated that plaintiff's general cognitive functioning was within

---

[13] For a limitation to satisfy the "marked" category, it must interfere seriously with the plaintiff's ability and is more than moderate but less than extreme.

the borderline range. (AR 334). It placed plaintiff's verbal comprehension in the low average range and his perceptual reasoning was in the average range. *Id.* Plaintiff's ability to sustain attention, concentrate, and exert mental control was in the borderline range. (AR 335). Plaintiff's ability to process visual information was in the borderline range. *Id.* Rife also examined plaintiff's mental status, noting plaintiff demonstrated an average level of attention and concentration, and his intellectual ability was estimated to be above average. *Id.* Rife suggested that plaintiff would benefit from minimal redirection and special supervision when completing tasks. (AR 336). Previously, Rowe's 2004 administration of the WISC-IV test indicated that plaintiff was functioning within the normal range and had a normal cognitive functional ability. (AR 304–305). One test placed plaintiff in the low-average range of intellectual functioning; however, Rowe suggested that plaintiff's score might be underestimated, because of his distractability. (AR 305). Rowe also noted that plaintiff's medications helped to reduce distractability. *Id.*

The teacher questionnaire completed in 2009 by the Special Education Department Chair also supports a finding of less than marked limitations. Other than for math problems and expressing ideas in written form, all other areas were noted as a "slight problem," including understanding vocabulary, reading and comprehending written material, recalling learned material, participating in class discussions, and providing organized oral explanations. (AR 258). Therefore, substantial evidence supports the ALJ's determination that plaintiff experienced less than marked limitation in this domain as an adolescent.

2.   Substantial evidence supports the ALJ's determination that plaintiff had less than marked limitation in attending and completing tasks.

The ALJ determined that plaintiff maintained less than marked limitation in attending and completing tasks. (AR 33–34). An adolescent without an impairment in attending and

completing tasks "should be able to pay attention to increasingly longer presentations and discussions, maintain his concentration while reading a textbook, and independently plan and complete long-range academic projects." 20 C.F.R. § 416.926a(h)(2)(v). This includes organizing materials and planning time. *Id.* Adolescents without an impairment in this domain should be able to: (1) not be easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (2) focus or complete activities of interest; (3) focus on activities without becoming frequently side-tracked; (4) sustain attention on tasks without becoming frustrated; and (5) be able to remain engaged in an activity without extra supervision. 20 C.F.R. § 416.926a(h)(3).

Here, plaintiff's mother testified that plaintiff had problems with focusing and concentrating. (AR 53–56). She testified that plaintiff enrolled in eleventh grade, but grew frustrated with the curriculum and stopped attending school. (AR 55). In a December 2009 Child Function Report, plaintiff's mother reported that plaintiff had difficulty focusing when he was given several tasks. (AR 201). She also noted that he needed an itinerary to keep him focused. (AR 206). Yet, plaintiff could maintain a job, working two days a week. (AR 51). Plaintiff could take his medicine as directed. (AR 52, 54, 55).

Moreover, plaintiff's school records support the ALJ's determination. In December 2009, Allen reported that plaintiff had only a "slight problem" in attending and completing tasks, such as carrying out single-step instructions and working at a reasonable pace. (AR 259). In addition, Allen noted that plaintiff had no problem sustaining attention during play and sports activities. *Id.* Following a December 2004 administration of the WJ III test, Colehower also reported that plaintiff was able to listen and follow a set of directions successfully. (AR 310).

As such, substantial evidence supported the ALJ's determination that plaintiff experienced less than marked limitation in this domain as an adolescent.

> 3.    Substantial evidence supports the ALJ's determination that plaintiff had less than marked limitation in interacting and relating with others.

The ALJ determined that plaintiff had less than marked limitations in interacting and relating to others. (AR 34–35). Adolescents without an impairment in interacting and relating to others "should be able to initiate and develop friendships with children of the same age and to relate appropriately to other children and adults, both individually and in groups." 20 C.F.R. § 416.926a(i)(2)(v). A child without an impairment in this domain should be able to make friends, play games or sports with rules, and use verbal and nonverbal skills to express himself. *See* 20 C.F.R. § 416.926a(i)(3).

Here, Allen reported that plaintiff had a slight problem in the ability to play cooperatively with children, make friends, express anger appropriately, and maintain appropriate topics of conversation. (AR 260–61). Allen reported that plaintiff had no problem relating experiences and telling stories, and interpreting facial expressions, body language, and hints. *Id.* Plaintiff's mother reported that plaintiff generally got along with his school teachers. (AR 223).

In his psychological examination, Rife reported that plaintiff was cooperative and alert. (AR 335). Plaintiff was able to initiate and sustain social connections with others. (AR 336). Therefore, substantial evidence exists in the record to support the ALJ's determination regarding plaintiff's ability to interact and relate to others.

> 4.    Substantial evidence supports the ALJ's determination that plaintiff had no limitation in moving about and manipulating objects.

The ALJ determined that plaintiff had no limitation in moving about and manipulating objects. (AR 35). An adolescent without an impairment in moving about or manipulating

23

objects "should be able to use his motor skills freely and easily to get about his school." 20

C.F.R. § 416.926a(j)(2)(v). An adolescent without an impairment in this domain should be able

to participate in many physical fitness activities. *Id.*

Here, plaintiff's mother submitted an August 2010 Child Function Report indicating that

plaintiff had no physical limitations. (AR 222). In December 2009, Allen reported that plaintiff

had no problems moving his body; moving and manipulating things; demonstrating strength,

coordination, and dexterity in activities; managing the pace of physical activities; showing a

sense of his body's location; and planning, remembering, and executing controlled motor

movements. (AR 261). As such, substantial evidence supports the ALJ's decision finding no

limitation in plaintiff's ability to move about and manipulate objects.

> 5. Substantial evidence supports the ALJ's determination that plaintiff had a
> less than marked limitation in caring for himself.

The ALJ determined that plaintiff had less than marked limitation in his ability to care for

himself. (AR 36). An adolescent with no impairment in the domain of caring for oneself should

"feel more independent from others and should be increasingly independent in all of his day-to-

day activities." 20 C.F.R. § 416.926a(k)(2)(v). The adolescent with no impairment as to caring

for oneself should begin to think seriously about his future plans. *Id.* He should take care of his

own health, safety, and personal needs. 20 C.F.R. § 416.926a(k)(1).

Here, Allen reported that plaintiff had no problem with personal hygiene, caring for

physical needs, and taking medication, and had only slight problems in his ability to handle

frustration appropriately and use good judgment regarding personal safety. (AR 262). Plaintiff

testified that he planned to complete his GED in the future, and contribute to the household

income in the meantime. (AR 51). Plaintiff's mother also testified that plaintiff planned to

complete his GED. (AR 56).

Plaintiff and his mother testified that plaintiff needs to be reminded to complete certain tasks, such as cleaning his room. (AR 52, 54). However, in a functional report, plaintiff's mother stated that plaintiff usually dressed himself and had the ability to shower on his own, brush his teeth, and choose his own clothes. (AR 205). As such, substantial evidence exists in the record to support the ALJ's determination regarding plaintiff's ability to care for himself.

      6.    Substantial evidence supports the ALJ's determination that plaintiff had no limitation in health and physical well-being.

The ALJ determined that plaintiff had no limitation as to his health and physical well-being. (AR 37). This domain considers the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on the claimant's function. 20 C.F.R. § 416.926a(l). "When your physical impairment(s), your mental impairment(s), or your combination of physical and mental impairments has physical effects that cause 'extreme' limitation in your functioning, you will generally have an impairment(s) that 'meets' or 'medically equals' a listing." 20 C.F.R. § 416.926a(l)(1).

Here, medical records sent to Dr. José indicated that plaintiff had a healing elbow fracture. (AR 434). Plaintiff did not have an elbow joint effusion. *Id.* Nothing else in the record indicates that plaintiff suffered any health concerns other than his ADHD. Plaintiff was otherwise in good health, and Dr. José's medical records fail to indicate any health concerns. (AR 343–45, 437, 439–42, 444–45). As such, substantial evidence supports the ALJ's determination that plaintiff experienced no limitation in this domain.

Therefore, based on the evaluation of the six domains, substantial evidence supports the ALJ's finding that plaintiff did not functionally equal the Listings at 112.11 for ADHD.

**D.    Substantial Evidence Supports the ALJ and Council's Determinations that Plaintiff Could Perform Unskilled Work that was Simple and Repetitive in Nature**

Plaintiff argues that the ALJ and Council erroneously assessed plaintiff's residual functional capacity. (Docket no. 14 at 8). Specifically, plaintiff argues the Council should have examined Allen's December 2009 Teacher Questionnaire (AR 257), because it reported, despite being in the tenth grade, that plaintiff had sixth-grade reading and writing levels, and a fifth grade math level. (Docket no. 14 at 10). Plaintiff argues the ALJ and the Council failed to consider the areas identified as an "obvious problem" in Allen's Teacher Questionnaire, and did not explain how a limitation to "simple, repetitive tasks" addressed the areas of obvious problems. *Id.* Finally, plaintiff argues neither the ALJ nor the Council addressed the inconsistencies in Rife's February 2010 examination and Allen's December 2009 Teacher Questionnaire. (Docket no. 14 at 11). Defendant contends that the ALJ properly considered plaintiff's RFC and adhered to the Commissioner's regulations in crafting plaintiff's RFC assessment. (Docket no. 16 at 20).

The Council adopted the ALJ's findings and conclusions under the sequential evaluation process for determining whether a claimant is disabled. (AR 4). The Council agreed with the ALJ's findings under steps one, two, and three, and adopted those determinations. *Id.* Specifically, at step one, plaintiff had not engaged in SGA since July 7, 2009 (the alleged onset of disability), and plaintiff's work as a maintenance worker/cleaner two days per week was not SGA. *Id.* At step two, plaintiff had severe impairments of ADHD and borderline intellectual functioning, which was consistent with Rife's report that plaintiff's general cognitive ability was within the borderline range of intellectual functioning. (AR 5, 334). At step three, plaintiff's impairments did not meet or equal in severity an impairment in the Listings of Impairments (20

C.F.R. § 416.920(d)). (AR 4). Before proceeding to step four, the Council considered the effect of plaintiff's mental impairments on his functional abilities, and determined that the impairments left plaintiff with the capacity to perform simple repetitive work. (AR 5).

At step four, the Council determined that plaintiff did not have any past relevant work because his job as a maintenance worker was performed subsequent to his alleged onset date of disability and was not SGA. *Id.* At step five, the Council found plaintiff was a younger individual with some high school education and the functional limitation of simple, repetitive tasks. *Id.* Accordingly, the Council determined that plaintiff was not disabled under the Act using section 204.00 of 20 C.F.R. Part 404, Subpart P, Appendix 2 (RFC to perform heavy work) as a framework. (AR 6).

> 1.    Substantial evidence supports the Council's determination that plaintiff had the RFC to perform simple, repetitive tasks.

The Council determined that plaintiff had the RFC to perform unskilled, simple, repetitive tasks. (AR 5). After step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, the Council must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e), (f). The RFC is the most a claimant can do despite his functional limitations. 20 C.F.R. § 416.945(a). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on a claimant's credible complaints. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.958(a). The mental activities required include: understanding, remembering, and carrying out simple instructions; making simple work-related decisions; responding appropriately to supervision; and dealing with changes in routine. SSR 96–9p, 1996 WL 374186, at *9 (1996).

The opinion of a treating physician must be given "controlling weight" if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig v. Chater*, 76 F.3d 585 at 590; 20 C.F.R. § 416.927(d)(2); *Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions*, SSR 96-2P (S.S.A July 2, 1996). In rendering its judgment, the Council may consider evidence not specifically noted by the ALJ. *See Perrin v. Colvin*, No. 3:12cv0741, 2013 WL 5603227, at *4 (E.D. Va. Oct. 11, 2013).

In making his determination, the ALJ relied heavily on Rife's opinion, finding plaintiff's and his mother's testimony less than credible, and determined that plaintiff could perform work at all levels of exertion. (AR 39). The Council accepted Rife's findings that were consistent with the RFC for simple repetitive tasks. (AR 5). Rife relied on medically-acceptable diagnostic techniques, such as the WISC-IV, and thus it was proper to consider his consulting opinion. In finding that plaintiff should be limited to unskilled work, the Council reasonably relied on Rife's February 2010 consulting opinion, plaintiff's other evaluations, and plaintiff's and his mother's testimony. (AR 5).

In this case, plaintiff did not offer the opinion of a treating physician, and there is no evidence that plaintiff had a treating physician for his ADHD. Rife is not a treating physician because he did not have an ongoing relationship with plaintiff; rather, Rife conducted a one-time consultative examination for the SSA. *See* 20 C.F.R. § 404.1502. As such, Rife's opinion is not entitled to automatic, total deference. *See* 20 C.F.R. § 404.1527(c)(2). However, the Council needed to consider the consistency of Rife's opinion against other evidence in the record to determine its proper weight. 20 C.F.R. § 404.927(c)(2) and 416.927(c)(4); *see also Perrin*, 2013 WL 5603227, at *4.

Rife reported that plaintiff needed only minimal redirection and would benefit from special supervision at work. (AR 336). This is consistent with plaintiff's testimony that his supervisor at Bottom Dollar generally checked his work. (AR 51). Rife also noted that plaintiff would not likely have difficulties accepting instruction from a supervisor or interacting with coworkers, and was not likely to have difficulties maintaining a job or performing work activities on a consistent basis. (AR 336). This is consistent with Ms. Davis's testimony that she often has to remind plaintiff to do things several times, but that he can keep himself on task if he keeps an itinerary. (AR 54, 206).

In addition, Rife's opinion reflects plaintiff's apparent desire to perform well. Although Allen reported that plaintiff had obvious problems respecting/obeying authority (AR 260), this is not supported by plaintiff's and his mother's testimony. Ms. Davis reported that plaintiff was helpful around the house (*e.g.* washed or dried dishes, made his bed, vacuumed the floor, mowed the yard, and helped with laundry). (AR 205, 224). Moreover, plaintiff's testimony that he worked only part-time at the Bottom Dollar, but would have no problem working additional hours per week, also reflects this sentiment. (AR 49–50). Plaintiff had no apparent problem with his supervisor checking his work.

Although Rife opined that plaintiff was not having significant difficulties in February 2010, and that plaintiff had the ability to perform even detailed and complex tasks, Rife assigned plaintiff a GAF score of 70, which is evidence that a restriction to simple repetitive work would well accommodate plaintiff's limitations. (AR 336). Such work is also well-suited to plaintiff's tenth-grade level of education, and sixth-grade aptitude in reading and writing. A limitation to simple work adequately accommodates plaintiff's difficulty with managing multiple assignments at once, as reported by Ms. Davis (AR 48, 54), and Allen's observation that plaintiff had obvious

problems carrying out multi-step instructions (AR 259). It is further supported by Allen's observation that plaintiff had only a slight problem carrying out single-step instructions and working at a reasonable pace. (AR 258). A restriction to simple work also accounts for plaintiff's obvious problems with focusing long enough to finish an academic assignment and completing work accurately, which Allen also noted. *Id.*

Plaintiff's limitations would not interfere with his ability to perform unskilled work. There is ample evidence in the record that shows that plaintiff has the mental activities generally required for such work, such as the ability to carry out simple instructions, make simple work-related decisions, and respond appropriately to supervision and co-workers. As such, the record amply reflects that the Council accounted for plaintiff's functional limitations resulting from his impairments by limiting him to unskilled work activity. Accordingly, the undersigned recommends a finding that the Council's decision, supported by Rife's assessment and opinion, as well as plaintiff's and his mother's testimony and Allen's Questionnaire, constitute substantial evidence that plaintiff has the RFC to perform simple repetitive work.

> 2.   Substantial evidence supports the Council's determination that plaintiff does not have any past relevant work.

The Council determined that plaintiff did not have any past relevant work. In making this determination, the Council noted that plaintiff's work as a cleaner at Bottom Dollar was performed subsequent to his alleged onset date of disability. (AR 5). Past relevant work is work that a claimant has done within the past fifteen years, that was SGA, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). SGA is work activity that is done for pay, which involves doing significant physical or mental activities. 20 C.F.R. § 404.1572.

Here, plaintiff testified that he began working at Bottom Dollar in approximately June 2011, as a maintenance worker/cleaner. (AR 49–51). Plaintiff worked two days per week. (AR

49–50). Because this did not involve significant physical or mental activities, this was not

performed at the substantially gainful level. (AR 5). As such, it cannot be considered past

relevant work. *Id.*

### E. Substantial Evidence Supports the ALJ's and Council's Determinations that Plaintiff Was Not Disabled and Any Procedural Error in the ALJ's Analysis was Harmless

Plaintiff contends the ALJ and the Council failed to follow the special technique for

analyzing mental health impairments under 20 C.F.R. § 404.1520a. (Docket no. 14 at 4–8).

Specifically, that the AJL and the Council failed to evaluate and document his pertinent

symptoms, signs, and laboratory findings to determine whether he had a medically determinable

mental impairment, and rate the degree of functional limitation in the four required areas. It is

important to note that the ALJ did make a finding of a severe mental impairment in his analysis.

In this case, the ALJ did not follow the special technique for evaluating mental

impairments under 20 C.F.R. § 404.1520a(b).[14] However, recalling that reviewing courts will

disregard procedural errors of a lower tribunal that "do not affect any party's substantial rights,"

Fed. R. Civ. P. 61, this is not reversible error because the AJL properly analyzed the child and

adult disability standards, which are substantially the same as the mental impairment analysis. In

other words, the mental impairment analysis is subsumed by the ALJ's meticulous analyses

under the other disability standards.

At the first step of the special technique for evaluating mental impairments, the court

must determine whether (1) the impairment is a medically determinable mental impairment, and

---

[14] Because plaintiff does not object to the entire analysis under the standard for evaluating mental impairments, the court need only consider (b) of the mental impairment disability standard. Under 20 C.F.R. § 404.1520a(d), the other portions of the analysis are whether the impairment: is severe; meets or medically equals a listing; and affects the RFC. 20 C.F.R. § 404.1520a(d). As stated above, the ALJ and Council considered these steps and found that plaintiff's impairments did not meet or medically equal a listing, and found that plaintiff had the RFC to perform simple, repetitive work. Moreover, this court has determined that there is substantial evidence in the record to support these findings.

(2) it is severe. 20 C.F.R. § 404.1520a(b). Severity is evaluated by rating the claimant's functional limitations in four broad areas. Plaintiff contends this was not done.

In determining that plaintiff suffered from the medically determinable mental impairments of ADHD and borderline intellectual functioning, the ALJ considered the record very carefully. Specifically, the ALJ examined plaintiff's educational background, school records provided by the Special Education Department Chair and a former teacher, medical history, psychological tests performed by Rowe, Lavenstein, and Rife, functioning reports provided by Ms. Davis, and the testimony of plaintiff and Ms. Davis at the November 2011 hearing. (AR 27–29). Effectively, the ALJ considered plaintiff's pertinent symptoms, signs, and laboratory findings, as required by the first part of the special technique, and as detailed above.

In addition, the ALJ analyzed plaintiff's functioning in the pertinent areas. Although the ALJ performed the analysis through the child's disability standard, the child's domains and the mental areas of functioning are substantially the same. Under the child's disability standard, the ALJ considered domains that evaluated plaintiff's ability to be "independent in all of his day-to-day activities," "to relate appropriately to other children and adults," to "pay attention," "maintain his concentration," and to "independently plan and complete" projects, assert emotional needs, and develop coping skills. 20 C.F.R. § 416.926a (h), (i), (k). The ALJ found that plaintiff had less than marked limitations in these areas. (AR 33–37).

These considerations are substantially the same as those four broad areas that are evaluated under the special technique for mental impairments. For example, the area of activities of daily living is substantially the same as the domain that evaluates the ability to be independent in day-to-day activities; the area of social functioning is substantially the same as the domain that evaluates the ability to relate appropriately to other children and adults; the area of concentration,

persistence, or pace is substantially the same as the domain that evaluates the ability to pay attention, maintain concentration, and plan and complete projects; and the area of episodes of decompensation is substantially the same as the domain that evaluates assertion of emotional needs and coping skills. *Compare* 20 C.F.R. § 404.1520a(c)(3) *with* 20 C.F.R. § 416.926a (h), (i), (k). Thus, even if plaintiff's impairments had been analyzed under the special technique using the four areas of functioning, there is no question that the outcome would be the same. As such, although the ALJ erred procedurally in not applying the special technique for mental impairments, the defect did not affect plaintiff's substantial rights. The ALJ found that plaintiff had severe impairments of ADHD and borderline intellectual functioning and discussed in detail how those severe impairments affected plaintiff's ability to function. Therefore, the procedural error in not detailing findings under 20 C.F.R. § 404.1520a was harmless. Because there is substantial evidence to support the ALJ's and the Council's determinations that plaintiff's severe mental impairments did not make him disabled under the Act, this is not reversible error.

## CONCLUSION

Based on the foregoing analysis, it is recommended that the court find that the Commissioner's decision was supported by substantial evidence and that the proper legal standards were applied in evaluating that evidence. Accordingly, the undersigned recommends that plaintiff's motion for summary judgment (Docket no. 13) be denied, that the Commissioner's motion for summary judgment (Docket no. 15) be granted, and that the final decision of the Commissioner be affirmed.

## NOTICE

Failure to file written objections to this report and recommendation within 14 days after being served with a copy of this report and recommendation may result in the waiver of any right to a *de novo* review of this report and recommendation and such failure shall bar you from attacking on appeal any finding or conclusion accepted and adopted by the District Judge except upon grounds of plain error.

Entered this 30TH day of December, 2013.

Alexandria, VA

_____ /s/ _____

John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge